IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TINA JANELLE MORRIS**                                                          **PLAINTIFF**

v.                                                                            **NO.: 1:21-cv-84-JMV**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration**        **DEFENDANT**

**FINAL JUDGMENT**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an August 13, 2020, final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that the Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is reversed and remanded for a determination by the ALJ of whether Plaintiff can maintain employment given her mental impairments .

On March 13, 2017, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. *See* Tr. at 14, 387-93; 42 U.S.C. § 1382c(a)(3)(A). After initial denials of Plaintiff's application and a remand from the Appeals Council, an ALJ held an administrative hearing on July 30, 2020, which Plaintiff, her attorney, and a vocational expert

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

attended. *See* Tr. at 58-91. Plaintiff was 42 years old on her application date and 46 years old on the date of the Commissioner's final decision. *See id.* at 14, 28, 387. Plaintiff completed the ninth grade in special education classes and had past relevant work as a cafeteria attendant and cook helper. *See id.* at 27, 419.

On August 13, 2020, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application. *See id.* at 14-29. After considering the entire record, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disorder, disorders of the back, obesity, schizoaffective disorder, post traumatic stress syndrome, depression, bipolar, anxiety, and borderline intellectual of functioning." *See id.* at 19-20. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations for presumptive disability at 20 C.F.R. Pt. 404, Subpt. P, App'x 1; Tr. at 20-23.

The ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, except with these limitations:

> The claimant can lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently. She can stand and walk for two hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally climb. She can occasionally stoop, kneel, crouch, crawl, and balance. She can have occasional exposure to dust, fumes, odors, pulmonary irritants, humidity, and areas with poor ventilation. She can never be exposed to unprotected heights or dangerous moving machinery. She can perform simple routine, repetitive tasks and make simple work-related decisions. She can understand, remember, and carry out simple instructions. She can have occasional interaction with coworkers and supervisors in the most basic manner, but never interact with the public. She can adapt to occasional and gradually introduced changes in the work environment. The claimant can sustain concentration, persistence, or pace for two-hour periods in an eight-hour workday.

Tr. 23-27.

Although the ALJ determined that Plaintiff could not perform her past relevant work, the ALJ found, pursuant to the VE's testimony, that Plaintiff could perform other work in the national economy. *See* Tr. at 27-29. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. *See id.* at 29. The Appeals Council denied Plaintiff's request for review by notice dated March 26, 2021, which left the ALJ's decision to stand as the Commissioner's final decision for purposes of this Court's review. *See id.* at 7-13.

Plaintiff raises the following claims of error: (1) whether the jobs identified by the vocational expert require exposure to dangerous moving machinery; (2) whether the ALJ properly followed the remand order from the Appeals Council; (3) whether the ALJ properly found as part of the residual functional capacity assessment that Plaintiff could maintain employment; and (4) whether the ALJ properly determined that Plaintiff was not illiterate. *See* Pl.'s Br. at 3-14.

### I.  The Jobs Identified by the VE Did Not Conflict with the ALJ's Residual Functional Capacity Assessment

The ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work and, relevant here, specifically limited Plaintiff to "never be exposed to . . . dangerous moving machinery" Tr. at 23. At the administrative hearing, Plaintiff's attorney stipulated to the VE's qualifications and had no objection to the VE's testimony. Tr. at 87. The VE testified that an individual with Plaintiff's RFC, including the limitation to no exposure to dangerous moving machinery, could perform the requirements of representative occupations such as produce sorter, eye glass polisher, and binding winder. *Id.* at 28, 88-89). Plaintiff now asserts that the jobs identified by the VE involve exposure to dangerous moving machinery. Pl.'s Br at 4-8. As explained below, because the Fifth Circuit has held that the ALJ may rely on a VE's expertise and the jobs do not necessarily involve dangerous moving machinery, Plaintiff's argument cannot succeed.

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attribute skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (internal citations omitted). Moreover, the Fifth Circuit has recognized that an ALJ is entitled to rely on a VE's knowledge of job requirements. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Here, the ALJ informed the VE that the jobs he identified needed to never expose Plaintiff to "dangerous moving machinery." Tr. at 88. The VE then testified—as an expert that Plaintiff stipulated to and had no objections about—that an individual who needed to never be exposed to "dangerous moving machinery" could perform the jobs of produce sorter, eye glass polisher, and binding winder. *Id.* at 88-89. Because the Fifth Circuit has recognized that vocational experts have "familiarity with job requirements and working conditions," the VE's testimony by itself provides sufficient evidence that the jobs identified do not involve exposure to dangerous moving machinery.

Moreover, there simply is no evidence that "dangerous moving machinery" is involved in the jobs the VE identified. The produce sorter (or nut sorter) occupation observes nuts traveling down a conveyor belt and simply removes items from the conveyor belt that are non-conforming nuts. *See* Dictionary of Occupational Titles (DOT), 521.687-086. The DOT entry for Nut Sorter does not include the use any protective equipment. *Id.* The same logic applies to the binding winder (carding-machine operator) occupation. *Id.* at 681.685-030. While the DOT description includes the use of a machine that moves, there is nothing in the job description that would make the moving machine "dangerous." *Id.* And, again, no protective equipment is mentioned in the DOT. *Id.* Because the VE testified that these jobs do not involve the use of "dangerous moving machinery"

and the description of the jobs does not involve any "dangerous" machinery, Plaintiff's argument that the VE identified jobs that cannot be performed is without merit.

    **II.**    **Although Not Reviewable by this Court, the ALJ Properly Followed the Remand Order from the Appeal Council**

Section 405(g) authorizes judicial review only where there is a "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). Here, the Commissioner's final decision is the ALJ's decision denying Plaintiff's applications for disability benefits. The question of whether the ALJ complied with the Appeals Council's remand order is not a "final decision of the Commissioner of Social Security made after a hearing." *Id.* The Social Security Act provides the Commissioner with the responsibility to establish rules and regulations, which necessarily includes the responsibility for defining the types of "final decisions" that are reviewable under 4 U.S.C. § 405(g) because the Act does not define "final decision." 42 U.S.C. § 405(a), (g). Social Security regulations provide a list of decisions the Commissioner may make that are subject to judicial review after administrative exhaustion. 20 C.F.R. § 416.1402. The list does not include whether an ALJ followed an order from the Appeals Council. *Id.*

Additionally, even if this issue was subject to judicial review, administrative exhaustion would also apply and prevent review of this issue. 20 C.F.R. § 416.1400 (providing an introduction and overview of the administrative review process). Plaintiff did not obtain an initial determination regarding whether the ALJ followed the Appeals Council's order. 20 C.F.R. § 416.1400(a)(1). Nor did Plaintiff seek reconsideration, an ALJ hearing, or Appeals Council review before seeking federal court review of this alleged error. 20 C.F.R. § 416.1400(a)(2)-(5).

The Appeals Council is in the best position to determine whether an ALJ has complied with their remand order. The Appeals Council reviewed the ALJ's decision and determined that the ALJ had followed their remand order. *See* Tr. at 7. Further, the ALJ complied with the Appeals

Council's February 5, 2020, remand order. The Appeals Council order required the ALJ to "Obtain additional evidence concerning [Plaintiff's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence." *Id.* at 193. The record shows that the ALJ obtained additional evidence after the remand, including treatment records from after the Appeals Council's remand order (Tr. 905-36). It bears noting the Appeals Council did not order the ALJ to obtain a consultative examination; it simply stated that the additional evidence the ALJ obtains "may" include a consultative mental status examination or opinions The use of "may" signals that the ALJ was not required to order a consultative examination.

### III. Did the ALJ Err in failing to consider whether Plaintiff could maintain employment despite her mental impairments

In the instant case the Commissioner argues the ALJ determined that Plaintiff could maintain employment because the ALJ implicitly determined in the RFC determination that Plaintiff could perform work on a regular and continuing basis. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (providing that absent evidence to the contrary, the ability to perform work on a regular and continuing basis is inherent in the definition of RFC, and a specific finding that the claimant can maintain employment is not necessary). Plaintiff, on the other hand, argues that the ALJ was required in this case to make a determination that she could hold a job for a significant period of time pursuant to *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986). And, while Plaintiff acknowledges there is no requirement "that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case," *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003), such a finding is necessary in a situation where, by its nature, the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Id.* Plaintiff argues that there is evidence in this case that her multiple severe mental impairments vacillate or "wax and

wane" in severity. In response, the Commissioner asserts there is no such evidence, and that, instead, the evidence is that plaintiff's mental impairments are always severe or incapacitating.

In my view, the Commissioner position is without merit. Indeed, the ALJ, himself, recited in his decision Plaintiff's testimony regarding the fact that her mental impairments vacillated in severity. He noted she described them as "mood swings" "like a roller coaster" with highs from mania ("hyper and can't sit still") to "depression ("not wanting to do anything"). The ALJ also noted that Plaintiff's medical records reflect that she has depression "triggers" and he cited varying reports of improvements in her mental impairments (See, for example, ALJ decision p. 21 noting a Jan. 2019 reduction in depression symptoms and in March 2019 "less commanding" audio hallucinations and only mildly impaired insight) and reports of worsening of the same (on a June 18, 2020, medical visit Plaintiff was disheveled, oppositional, irritable, angry, sad and exhibited impaired insight; on another occasion her medication for hallucinations had to be increased).

In short, it is undisputed that Plaintiff who has borderline intellectual functioning, has for many years suffered from (and has been medically treated for) the following severe mental impairments: Schizoaffective disorder (with audio and visual hallucinations); Bi-Polar Disorder, Post traumatic Stress Disorder, Depression and Anxiety, and these conditions are generally recognized as being, by their very nature, unstable. *See Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (recognizing for example, that PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it and may wax and wane after manifestation. Bi-Polar disorder). This coupled with the lengthy mental health treatment history and reports of vacillating symptomology, *Frank* requires that the ALJ specifically assess Plaintiff's ability to hold whatever job he may find for a significant length of time. *See Frank*, 326 F.3d at 619. By failing

to make the specific determination required by *Frank*, the ALJ thereby committed legal error. *See Moore v. Sullivan*, 895 F.2d 1065, 1069-70 (5th Cir. 1990). When the ALJ "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Id.* (quotation omitted). Accordingly, this case must be reversed and remanded.

## IV. The ALJ Properly Determined that Plaintiff Was Not Illiterate

The ALJ found at step five of the sequential evaluation process the ALJ determined that Plaintiff had "limited education." *See* Tr. at 28. The regulations define the education levels, which include "illiteracy," "marginal education," and "limited education." 20 C.F.R. § 416.964(b)(1)-(3). Specifically, the regulations provide:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 416.964(b)(1), (3).

The ALJ determined that Plaintiff had a limited education and had the VE assume a limited education in the hypothetical questions posed. *See* Tr. at 28, 88. Substantial evidence supports this finding. At the administrative hearing, Plaintiff testified that she could read and write a little and could read a paragraph in a newspaper. *See* Tr. at 102. Plaintiff also stated she took and passed her driver's license test on a computer but needed two attempts to pass the test. *See id.* at 79. This

testimony is inconsistent with the regulations' definition of illiteracy. 20 C.F.R. § 416.964(b)(1). As such, the ALJ properly found that Plaintiff was not illiterate.

## V. Conclusion

As such, the decision is reversed and remanded to determine whether Plaintiff could maintain employment given her mental impairments.

**SO ORDERED**, this the 28th day of April, 2022.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**